IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALFREDO YANEZ MARTINEZ,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br>Case No. 2:24-CR-183-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Alfredo Yanez Martinez's Motion to Suppress.[1] For the reasons discussed below, the Court will deny the Motion.

## I. BACKGROUND

A four-count Indictment was filed against Defendant on May 9, 2024, for Possession of Methamphetamine with Intent to Distribute (Count 1); Possession of Fentanyl with Intent to Distribute (Count 2); Felon in Possession of a Firearm and Ammunition (Count 3); and Possession of a Firearm in Furtherance of a Drug Trafficking Offense (Count 4).[2] Defendant seeks to suppress evidence discovered as a result of a search warrant authorizing a search of his vehicle and a subsequent search warrant authorizing a search of his hotel room. Defendant argues that the warrants were facially invalid and, therefore, all evidence derived therefrom must be excluded.

---

[1] Docket No. 33.

[2] Docket No. 1.

1

On March 20, 2024, a Utah Justice Court Judge issued a warrant authorizing law enforcement officers to conduct a search of both a residence located in Sandy, Utah, and a white Ford truck that was registered to Defendant. The affidavit submitted in support of the warrant alleged that the officers had made at least one controlled purchase of fentanyl pills from a person at the Sandy residence named Richard Hansen with the help of a confidential informant ("the informant"). The informant participated in the drug transaction and returned purchased fentanyl pills to the officers following the transaction. The warrant further alleged that the informant told law enforcement officers that Defendant "had just returned from Arizona where he picked up a distributable amount of fentanyl pills, methamphetamine, and heroin," and that Defendant gave Richard Hansen a "large portion" of the illicit substances.[3] The informant also alleged that Defendant used his truck to transport drugs and provided the license plate number and issuing state of Defendant's truck.

In support of the informant's reliability, the affidavit states that the informant provided officers with their name and other personal information, and that they made statements against their own interest.

The affidavit also alleged that Defendant lived in the basement of the Sandy residence and sold drugs from the residence. As corroboration, the affiant explained that he conducted surveillance on the residence and observed "short-stay traffic" from people coming and going from the residence.[4] The affiant stated that based on his training and experience, short-stay

---

[3] Docket No. 33-1, at 5.

[4] *Id.*

traffic is common when drugs are being sold from a location. The affiant did not allege that he observed Defendant or his truck at the residence when he conducted surveillance.

Officers executed the warrant on Defendant's truck on March 20, 2024, after observing Defendant and a female drive the truck from a hotel where Defendant was believed to be staying to the parking lot of a local business. Officers discovered a user amount of narcotics on the female passenger's person, a small amount of blue pills in the truck, and a key to a room at the nearby hotel and a phone that was live streaming video footage of the hotel room on Defendant's person. Utilizing this information, along with additional information not included in the first affidavit, officers applied for a warrant to search the hotel room. The Utah Justice Court Judge issued a warrant authorizing a search of the hotel room on the evening of March 20, 2024. The search of the hotel room led to discovery of the evidence Defendant now seeks to suppress.

Defendant argues that both the first warrant authorizing a search of Defendant's truck and the second warrant authorizing a search of Defendant's hotel room were not supported by probable cause. Accordingly, Defendant moves for suppression of all contraband discovered during the searches. Defendant further argues that the lack of probable cause cannot be excused because the search was not conducted in good faith.

## II.  DISCUSSION

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized."[5] The Supreme Court has interpreted this language to require only three things:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense. Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.[6]

At issue here is whether the warrant was supported by probable cause. "An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place."[7] In making this assessment, "a magistrate's task is to make a 'practical, common-sense decision' based on the totality of the circumstances as set forth in the affidavit[.]"[8] In cases where statements from an informant are the basis of the affidavit, "veracity, reliability, and basis of knowledge are highly relevant as to whether a tip can support probable cause."[9] "Reviewing courts should give the magistrate's ultimate probable cause decision great deference. Nevertheless, [courts should] not defer to the magistrate's

---

[5] U.S. CONST. amend IV.

[6] *Dalia v. United States,* 441 U.S. 238, 255 (1979) (internal quotation marks and citations omitted).

[7] *United States v. Roach,* 582 F.3d 1192, 1200 (10th Cir. 2009) (internal quotation marks and citation omitted).

[8] *United States v. Rowland*, 145 F. 3d 1194, 1204 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[9] *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) (internal quotation marks and citations omitted).

determination if the affidavit does not provide a substantial basis for concluding that probable cause existed."[10]

Defendant argues that the allegations included in the affidavit failed to provide probable cause that Defendant's vehicle contained any evidence of a crime. Specifically, Defendant argues that the affidavit in support of the warrant did not include allegations that Defendant's truck was ever observed at the Sandy residence, where law enforcement conducted the controlled fentanyl buy. Instead, the search of the vehicle was predicated on information provided by the informant who, Defendant argues, lacked sufficient veracity and basis of knowledge to supply probable cause.

The informant's allegations related to Defendant's vehicle that are described in the affidavit include that Defendant had just returned from Arizona where he picked up a distributable amount of fentanyl pills, methamphetamine, and heroin, that he used his vehicle to transport the drugs from Arizona to the Sandy residence, and that he gave a portion of those drugs to Mr. Hansen to be sold. The affidavit further alleges that the informant provided law enforcement with the license plate number and issuing state of Defendant's truck.

As stated, to determine if these statements provided a substantial basis for concluding that probable cause existed, the Court must consider the informant's veracity, reliability, and basis of knowledge. "Veracity concerns whether there is reason to believe that the informant is telling the truth, including whether he faces criminal charges or whether his statement is against his own penal interest."[11] However, if "there is sufficient independent corroboration of an informant's

---

[10] *Rowland*, 145 F.3d at 1204 (internal quotation marks and citations omitted).

[11] *Quezada-Enriquez*, 567 F.3d at 1233 (citations omitted).

information, there is no need to establish the veracity of the informant."[12] In assessing reliability, courts consider "whether the informant has provided accurate information in the past."[13] "As for basis of knowledge, a firsthand observation is entitled to greater weight than secondhand information."[14] If, as here, "the informant's basis of knowledge is not described on the face of the affidavit, [courts] look . . . for the kind of highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity."[15]

The government argues that in support of these elements, the affidavit explains that the informant "had disclosed to officers [their] 'name and other personal information,' as well as 'made statements to Narcotics Detectives against [their] own interest.'"[16] Further, they argue that the affidavit describes the details the informant provided regarding Defendant's alleged drug run to Arizona, including where he went, the type of drugs he was picking up, who he delivered a portion of the drugs to, and the license plate details of Defendant's truck. The government argues that "this level of detail" indicates that the informant's information was provided based on their "personal observation, or at the very least did not come to [them] as a casual rumor."[17] Finally, the government argues that some details provided by the informant were corroborated by the

---

[12] *United States v. Danhauer,* 229 F.3d 1002, 1006 (10th Cir. 2000).

[13] *Quezada-Enriquez*, 567 F.3d at 1233 (citation omitted).

[14] *Id.* (citation omitted).

[15] *Id.* (internal quotation marks and citations omitted).

[16] Docket No. 37, at 7 (citing *United States v. Pulliam,* 748 F.3d 967, 971 n.2 (10th Cir. 2014)).

[17] *Id.*

affiant, namely that the controlled purchase produced the kind of drugs the informant had disclosed (fentanyl), and surveillance of the residence revealed short-term traffic, which is consistent with narcotics distribution. The government concludes that these "indicators of veracity and reliability for the informant in this case, combined with the independent corroboration of the informant's information, provided a substantial basis for the magistrate's determination."[18]

The affidavit provides little information supporting that Defendant's truck contained evidence of a crime. The informant's statements that Defendant used his truck to transport drugs from Arizona and brought a portion of them to the residence, if reliable, could support probable cause that the vehicle contained narcotics. However, as noted by Defendant, the affidavit does not include an explanation as to the basis of the informant's allegations. As argued by the government, the informant did provide some level of detail regarding Defendant's transportation of the drugs, such as where Defendant was going to get the drugs and the type of drugs involved. However, this does not amount to "the kind of highly specific or personal details from which" a magistrate could reasonably infer that the informant had firsthand knowledge of the event.[19]

An insufficient showing of basis of knowledge, however, is not fatal to the warrant as veracity, reliability, and basis of knowledge "are not absolute, independent requirements."[20] The

---

[18] *Id.* at 8.

[19] *Quezada-Enriquez*, 567 F.3d at 1233 (internal quotation marks and citation omitted).

[20] *Id.* ("These factors are not absolute, independent requirements that must be satisfied in order for probable cause to exist; rather, we evaluate whether these factors as revealed by the facts in the affidavit create a fair probability that contraband or evidence of a crime will be found in a particular place on consideration of the totality of circumstances.") (internal quotation marks and citation omitted).

information argued by the government, discussed above, including information disclosing the informant's involvement with and statements to law enforcement, and the limited corroborating information does provide some support as to the informant's reliability and veracity. Ultimately, however, the Court need not determine if this limited information presented probable cause to search Defendant's truck. As discussed below, the Court finds that regardless of whether the affidavit included sufficient information to support a probable cause finding, "there is enough in the affidavit to cause [the Court] to readily conclude that the officers who executed the warrant [on Defendant's truck] acted in good faith."[21]

In *United States v. Leon*,[22] the Supreme Court found that evidence of a crime should not be excluded if the retrieving officer acted in good faith because "where [an] officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way."[23] The Tenth Circuit has "concluded that *Leon*'s good faith exception applies only narrowly, and ordinarily only when an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer."[24] "[O]fficers are generally not required to second-guess the magistrate's decision in granting a warrant."[25] Therefore, where officers executed a search warrant in retrieving the evidence subject to exclusion, the good faith

---

[21] *Id.* at 1234 (citing *Danhauer*, 229 F.3d at 1005) ("[Courts] have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question.").

[22] 468 U.S. 897 (1984).

[23] *Id.* at 919–20 (internal quotation marks and citations omitted).

[24] *United States v. Perrine,* 518 F.3d 1196, 1206 (10th Cir. 2008) (quoting *United States v. Cos*, 498 F.3d 1115, 1132 (10th Cir. 2007)).

[25] *United States v. Gonzales*, 399 F.3d 1225, 1228–29 (10th Cir. 2005).

exception will apply so long as the warrant is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[26]

Defendant cites to several cases where courts found the good faith exception did not apply because the information included in the warrant had, at most, a sparce relationship to the area searched.[27] In *Cordova*, the warrant at issue was based on, among other things, information provided by an informant 21 months before the search took place, regarding a drug transaction that occurred in front of the home the defendant previously lived in, which was not the home that was searched.[28] In *Gonzales,* the warrant at issue provided only a "physical description of the address," but did not otherwise explain "how the address was linked to [the defendant], the vehicle [involved], or the suspected criminal activity, or why the officer thought the items to be seized would be located at the residence."[29] In both of these cases, the presiding court determined the warrant was so lacking in probable cause that the good faith exception could not apply.

The Court cannot conclude that the warrant in this case is so lacking. Here, the affidavit included statements from a confidential informant supporting that Defendant drove a truck to and from Arizona for the purpose of transporting distributable amounts of specified drugs; the informant had established some level of reliability and veracity through their statements and efforts; and law enforcement officers had conducted surveillance which corroborated limited

---

[26] *Leon*, 468 U.S. at 923 (internal quotation marks and citation omitted).

[27] Docket No. 33, at 12–14 (citing *United States v. Cordova*, 792 F.3d 1220, 1226 (10th Cir. 2015), as corrected (July 31, 2015); *Gonzales*, 399 F.3d at 1229).

[28] *Cordova*, 792 F.3d at 1226.

[29] *Gonzales*, 399 F.3d at 1230.

information provided by the informant. Even if the Court were to conclude that the affidavit contained no evidence establishing the informant's reliability, the Tenth Circuit has found that "the absence of information establishing [an] informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued, . . . particularly when the officer takes steps to investigate the informant's allegation."[30] Accordingly, the Court concludes that even if "the affidavit in support of the warrant did not establish probable cause, it was not so lacking in indicia of probable cause that the executing officer should have known the search was illegal despite the state magistrate's authorization."[31] Because the Court finds that the officers executing the warrant on Defendant's truck acted in good faith, the Court will not exclude any evidence resulting from the search.

    Defendant also argues that the second warrant authorizing search of his hotel room was facially invalid because it was not supported by probable cause. The affidavit in support of the second warrant contains many of the same allegations as the first affidavit, including that: officers utilized an informant to conduct several controlled buys of fentanyl at the Sandy residence; the informant stated that Defendant had returned from Arizona where he picked up distributable amounts of fentanyl, methamphetamine, and heroin in his truck and brought it to the Sandy residence; and the officer observed short-stay traffic at the Sandy residence. However, the second warrant also alleges that: officers observed Defendant's truck parked in the driveway of the Sandy residence, where the controlled buys were conducted; the informant told officers that Defendant had been confronted by neighbors complaining about short-stay traffic and

---

[30] *Danhauer*, 229 F.3d at 1007.

[31] *Id.*

"undesirable looking people consistently coming and going"[32] from the Sandy residence; the officer was informed that, following the confrontation with the neighbors, Defendant moved a large amount of narcotics from the Sandy residence to a motel room; officers confirmed that Defendant's truck had left the Sandy residence; officers later located Defendant's vehicle in a Best Western parking lot; officers confirmed with the Best Western staff that Defendant had checked into the hotel and had reserved room 304; officers conducted surveillance at the Best Western for a short time and observed Defendant leave the hotel, enter his truck, and drive to a local business where the first search warrant was executed; the search revealed that Defendant was in possession of a key to a Best Western hotel room and that his phone was streaming live video footage of inside a motel room, believed to be room 304 at the Best Western; and in the affiant's training and experience, this type of remote surveillance is consistent with drug distribution when a large amount of narcotics are being kept in one area.

      The Court finds that the information included in the second affidavit, described above, establishes the fair probability that contraband or evidence of a crime would be found in the Best Western hotel room. Accordingly, the second search warrant was supported by probable cause and evidence resulting from the execution of the warrant is not excludable. Because the evidence resulting from both challenged warrants is not subject to exclusion under the Fourth Amendment, the Court will deny Defendant's Motion

---

[32] Docket No. 33-3, at 5.

## III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 33) is DENIED.

DATED this 19th day of February, 2025.

BY THE COURT:

_____
Ted Stewart
United States District Judge