IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ALFREDO YANEZ MARTINEZ,<br><br>　　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL DISCOVERY<br><br><br>Case 2:24-cr-00183-TS<br><br>District Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter is before the Court on Defendant Alfredo Yanez Martinez's Motion to Compel Discovery.[1] For the reasons discussed herein, the Court will deny the Motion.

I.  BACKGROUND

A four-count Indictment was filed against Defendant on May 29, 2024, charging him with Possession of Methamphetamine with Intent to Distribute (Count 1); Possession of Fentanyl with Intent to Distribute (Count 2); Felon in Possession of a Firearm and Ammunition (Count 3); and Possession of a Firearm in Furtherance of a Drug Trafficking Offense (Count 4).[2] Defendant pleaded not guilty to each of the charges in the Indictment.[3]

In August 2024, the government produced a DNA forensic report from Megan Duge, an employee of DNA Labs International. In April 2025, Defendant's counsel requested additional discovery related to the laboratory process. In response, the government produced additional "cost-free" documents related to the request, including the entire case file for the forensic

---

[1] Docket No. 61.

[2] Docket No. 1.

[3] Docket No. 13.

analysis performed in relation to the case. The government asserts that "[w]ith that production, [it] produced all forensic materials in its possession, custody, or control because it cannot obtain any additional materials without an additional payment."[4]

Defendant's counsel then requested "complete discovery" of the government's related DNA evidence, including "raw data, forensic biology notes, communications logs, database cold hit documentation, STR data, probabilistic genotyping documentation, current forensic biology and DNA protocols . . . , any abbreviations/acronyms used by the laboratory, and a copy of logs documenting any unexpected results pertaining to the DNA analysis that defense counsel was requesting."[5] The government objected to providing such information because the information was not in its possession and the government would have to pay to obtain it. Defendant now seeks an order compelling disclosure of this information. Defendant's Motion also seeks disclosure of the government's DNA expert as required by Federal Rule of Procedure 16(a)(1)(G). The government has since indicated it will no longer call its DNA expert. This issue is therefore moot.

## II.  DISCUSSION

Defendant asserts that both the Due Process Clause and Rule 16(a)(1)(F) of the Federal Rules of Criminal Procedure require disclosure of the requested DNA evidence. He argues that "[a] complete understanding of how the testing was conducted, the quality of protocols applied to the testing, the qualifications and communications of the analysts and so forth, are all needed to understand the veracity of this evidence, its limitations, and its probative value—paramount

---

[4] Docket No. 63, at 4.

[5] Docket No. 61, at 3–4.

considerations for impeachment and challenging this evidence at trial."[6] Defendant also attaches the affidavit of Dr. Norah Rudin, which explains the purported necessity of the evidence.

   a. Federal Rule of Criminal Procedure 16(a)(1)(F)

Rule 16(a)(1)(F) provides:

> Upon a defendant's request, the government must permit a defendant to inspect . . . the results or reports of any . . . scientific test or experiment if: (i) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows—or through due diligence could know—that the item exists; and (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

The government first argues that the language of the Rule 16 requires only "results or reports" of a DNA forensic test and Defendant's request is for materials that are not "results or reports." In support, the government cites to the Tenth Circuit's opinion in *United States v. Price*,[7] wherein the court upheld a district court's decision finding that the government need not produce "(a) the underlying bases of the government chemist's conclusion that the substances he tested were methamphetamine; (b) information relating to the reliability of the chemist's equipment; and (c) evidence of the chemist's credentials."[8] The government in that case, as here, represented that the defendant had been provided all of the materials related to the underlying testing that was in the government's possession. The Tenth Circuit held that the relevant Rule 16 language is "clear on its face" in "require[ing] the prosecution to turn over 'results and reports' of scientific tests."[9] And, because "the record show[ed] the prosecution turned over its entire investigative files, including all reports and test results issued by the [relevant] laboratories," the

---

[6] *Id.* at 5.

[7] 75 F.3d 1440 (10th Cir. 1996).

[8] *Id.* at 1444 (internal quotation marks and citation omitted).

[9] *Id.* at 1445.

3

government complied with its Rule 16 obligation and the district court "did not abuse its discretion in refusing to permit additional discovery relating to laboratory processes."[10]

Defendant argues that the facts in *Price* are distinguishable because the trial court there found that the defendant "did not develop his reasoning or argument to supply the court with the factual and legal basis it needed to grant the request," whereas here, Defendant asserts he has "supplied an abundance of reasons in support of his specific requests for discovery under [Rule] 16(a)(1)(F)."[11] However, Defendant's argument focuses on the analysis of the lower court and not the holding of the Tenth Circuit regarding the requirements of Rule 16. While Defendant has argued extensively in support of the materiality of the requested evidence to his case, materiality is a predicate under Rule 16 for disclosure of "results and reports" only. Defendant has not provided the Court with any authority suggesting that Rule 16's plain language requiring disclosure of "results and reports" encompasses the underlying methodology of those scientific reports, or the other related information that Defendant seeks. Defendant has also not argued that any of the requested information not provided by the government falls into the category of a result or report. Accordingly, the Court finds that the plain language of Rule 16, as interpreted by the Tenth Circuit, does not require the government to provide the materials requested by Defendant.

Defendant also argues that *Price* is distinguishable because the defendant there limited its arguments to Rule 16 and, here, Defendant has raised alternative arguments. This is true. However, this Court's reliance on *Price* is limited to Defendant's Rule 16 arguments. The Court

---

[10] *Id.*

[11] Docket No. 67, at 4.

addresses Defendant's alternative arguments supporting disclosure of the requested materials below.

    b. *Due Process Clause*

Defendant argues he is entitled to disclosure of the requested information under the Due Process clause and *Brady v. Maryland*.[12] In *Brady,* the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[13] "However, the Constitution, as interpreted in *Brady,* does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant."[14] "The prosecution must only reveal information that it had in its possession or knowledge—whether actual or constructive."[15]

The government asserts that the requested DNA information is not in the possession or control of the government and is therefore not subject to *Brady* disclosure. Instead, that information, to the extent it exists, is possessed by DNA Labs International. Defendant does not appear to dispute that the government is not in actual possession of the requested information, but instead argues the government possess it constructively. In support of his argument, Defendant cites to a California Court of Appeals case, in which the court found that the government was in constructive possession of material held by a third-party agency after

---

[12] 373 U.S. 83 (1963).

[13] *Id*. at 87.

[14] *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999) (internal quotation marks and citation omitted).

[15] *Id.*

analyzing whether the third-party agency was "a member of the prosecution team."[16] Defendant asserts that this case stands for the proposition that "[p]rivate labs contracting with and/or acting in the direction of the government are part of the prosecution team."[17] However, the California court's ruling was not so broad as Defendant suggests. Instead, that court explored at length the issue of whether a third party agency's involvement in the investigation was sufficiently pervasive to make the agency a member of the prosecution team.[18] After analyzing the agency at issue's involvement, that court concluded that the agency was a member of the prosecution team because they had assisted in the investigation of the defendant leading up to the charges and otherwise acted with "the same relationship to the prosecution and law enforcement as a government crime laboratory."[19]

    The Tenth Circuit has also discussed the concept of third-party agencies becoming a part of "the prosecution team" for purposes of *Brady.* In *McCormick v. Parker*,[20] the Tenth Circuit found that a nurse, who examined an alleged victim "at the behest of law enforcement as part of a criminal investigation" into the defendant, was "part of the prosecution team."[21] In reaching

---

[16] *Bracamontes v. Superior Ct. of San Diego Cnty.*, 42 Cal. App. 5th 102, 116 (2019).

[17] Docket No. 67, at 7.

[18] *Bracamontes*, 42 Cal. App. 5th at 116. ("At its core, members of the team perform investigative duties and make strategic decisions about the prosecution of the case. Yet the team may also include individuals who are not strategic decision-makers, e.g., testifying police officers and federal agents who submit to the direction of the prosecutor and aid in the government's investigation. To be sure, interacting with the prosecution team, without more, does not make someone a team member. But greater involvement with the team makes imputation more likely. In that vein, relevant circumstances include whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy.").

[19] *Id.*

[20] 821 F.3d 1240 (10th Cir. 2016).

[21] *Id.* at 1247 (internal quotation marks omitted).

this conclusion, the Tenth Circuit "emphasize[d]" the decision's "essence—i.e., that [the nurse] was part of the prosecution team because she acted at the request of law enforcement in the pre-arrest investigation of a crime."[22] The Tenth Circuit went on to explain that the holding was limited "to the facts before [it],"[23] and specified that it did not consider "whether an expert who had no pre-charge investigatory role may be a member of the prosecution team for *Brady* purposes."[24] In explicitly limiting its holding, the Tenth Circuit cited to the Second Circuit's decision in *United States v. Skelly*,[25] which held that the prosecution's duty to disclose "does not extend to the knowledge of an ordinary expert witness who was not involved with the investigation of the case."[26]

Based on the above, whether the third-party laboratory that prepared the reports in this case is "part of the prosecution team" depends on the extent of their involvement with the prosecution. Here, the government explains in its Surreply that it "retained DNA Labs International as a potential trial expert after the conclusion of its investigation and the defendant's indictment" and, therefore, "the requested forensic discovery is in the possession and control of a private lab retained by the United States solely as a trial expert."[27] As pointed out by the government, the California case cited to by Defendant suggests that this level of involvement does not qualify DNA Labs International as part of the prosecution team. In the California case, the court went on to consider whether expert witnesses retained in the case after charges were

---

[22] *Id.* at 1247–48.

[23] *Id.* at 1248.

[24] *Id.*

[25] 442 F.3d 94 (2d Cir. 2006).

[26] *Id.* at 100.

[27] Docket No. 70, at 2.

brought were part of the prosecution team. In concluding that they were not, the court found it significant that, although "the government exercised some degree of control over [the experts] by giving them their tasks and providing them with the relevant factual universe," the experts had not "worked with the government to develop evidence, performing specific tests at the government's direction," but instead "merely reviewed evidence already collected."[28] As noted above, and by citation to the Second Circuit, the Tenth Circuit has implicitly found similarly.

Here, Defendant has not cited to any legal authority that supports the conclusion that the involvement of the DNA laboratory retained by the government in this case was sufficiently intertwined with the government's investigation as to render the laboratory "part of the prosecution team." Accordingly, the Court finds that Defendant has not shown that the government is in constructive possession of the information Defendant seeks, and thus the information is not subject to disclosure under *Brady*.

Because Defendant has not demonstrated that the DNA information it seeks from the government is subject to disclosure under either Rule 16(a)(1)(F) or *Brady*, the Court will deny the Motion to Compel.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Compel Discovery (Docket No. 61) is DENIED.

---

[28] *Bracamontes*, 42 Cal. App. 5th at 120; *see also United States v. Morgan*, 302 F.R.D. 300, 304–06 (S.D.N.Y. 2014) (finding that FBI laboratory employees who performed DNA testing were not part of the prosecution team and evidence in their possession was outside the scope of Rule 16, *Brady*, and *Giglio*).

DATED this 17th day of November, 2025.

BY THE COURT:

_____
Ted Stewart
United States District Judge